# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiffs,<br><br>    v.<br><br>FRANCISCO RODRIGUEZ-GARCIA,<br><br>        Defendant. | CASE NO. 12-cr-4668-GPC<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS INDICTMENT**<br><br>**(ECF NO. 16)** |

## I. OVERVIEW

Defendant Francisco Rodriguez-Garcia filed his motion to dismiss the indictment on March 3, 2003, and the Government filed its response and opposition on March 21, 2013. On March 29, 2013, the Court held a hearing on Defendant's motion to dismiss indictment. Following careful review and consideration of the parties' arguments and record in this case, the Court **DENIES** Defendant's motion for the reasons set forth below.

## II. BACKGROUND

On February 20, 2004, Rodriguez, a Mexican citizen, was convicted of Attempted Murder in violation of California Penal Code § 664-187; Having a

1

ORDER DENYING MOTION TO DISMISS INDICTMENT

Concealed Firearm on Person in violation of Penal Code § 12025(a)(b)(6); and Street Terrorism in violation of Penal Code § 186.22(a). (02/20/04 Minute Order, Govt.'s Ex. 2).

Because of Rodriguez's conviction, the Department of Homeland Security initiated administrative removal proceedings against him. Rodriguez was detained on May 17, 2007, for immigration removal proceedings after his release from incarceration at High Desert State Prison, Susanville, CA. (Form I-213, Govt.'s Ex. 8). An Immigration Enforcement Agent served Defendant with a Notice of Intent to Issue a Final Administrative Removal Order. (Notice, Govt.'s Ex. 9). The Notice charged that Rodriguez was deportable under 8 U.S.C. § 1227(a)(2)(iii) because he had been convicted of an aggravated felony as defined in 8 U.S.C. § 1101(a)(43)(A,F,U) (defining "aggravated felony" to include murder, a crime of violence, or an attempt to commit such offenses.) The Notice cited Defendant's February 20, 2004 conviction for attempted murder as the "aggravated felony" that supported the administrative removal proceeding.

The Notice also advised Rodriguez of his right to have an attorney represent him in the proceeding and provided instructions on how to contest deportability and how to appeal any decision. *Id.* The Notice specifically provided the means to contest deportability because of Rodriguez being a citizen, national, or permanent resident, or because Rodriguez "was not convicted of the criminal offense described in the [citation]." *Id.* Rodriguez signed the Notice, acknowledging that he received the Notice, and stated that he did not wish to contest the removal. The Immigration Enforcement Officer signed the Notice, as well, and verified that the Notice had been served on and explained to Defendant in the English language. *Id.*

On May 17, 2012, Rodriguez was issued a Final Administrative Removal Order. (Final Administrative Order, Govt.'s Ex. 10). The Order contained

findings that Rodriguez was not a citizen of the United States, that he was a citizen of Mexico, and that he had a final conviction for an aggravated felony as defined in 8 U.S.C. § 1101(a)(43)(U,F). *Id.* On the basis of the Order, Rodriguez was removed on May 18, 2007. (Warrant of Removal, Govt.'s Ex. 12).

On November 2, 2012, Rodriguez was arrested near Calexico, California. Defendant reentered the United States. On November 14, 2012, a federal grand jury in the Southern District of California returned a one-count indictment against Francisco Rodriguez-Garcia, charging him with Attempted Reentry of a Removed Alien, in violation of 8 U.S.C. §§ 1326(a) and (b). Rodriguez has entered a plea of not guilty.

### III. DISCUSSION

Rodriguez moves to dismiss the indictment due to alleged due process defects in the underlying 2007 deportation proceedings. Under § 1326(d), a defendant charged with illegal entry may seek dismissal of the charge by collaterally attacking the prior removal order, which is a prerequisite to establish the crime of illegal entry. *See United States v. Mendoza-Lopez*, 481 U.S. 828, 837-39 (1987). A defendant moving to dismiss an indictment under § 1326(d) bears the burden of proving:

 (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;

 (2) the deportation proceeding at which the order was issued improperly deprived the alien of the opportunity for judicial review; and

 (3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d); *United States v. Ramos*, 623 F.3d 672, 680 (9th Cir. 2010). To prevail on a motion to dismiss an indictment on the basis of an alleged due process defect in an underlying deportation proceeding, a defendant must not

ORDER DENYING MOTION TO DISMISS INDICTMENT

only establish that the defects in the deportation proceeding violated his due process rights, but also show that he suffered prejudice as a result of those defects. *Ubaldo-Figueroa*, 364 F.3d at 1048. A defendant need not conclusively demonstrate that he or she would have received relief to show prejudice, but must show only that there were "plausible grounds for relief." *United States v. Gonzalez-Valerio,* 342 F.3d 1051, 1054 (9th Cir.2003). If the defendant is "barred from receiving relief, his claim is not 'plausible.'" *Id.* at 1056.

**A. Exhaustion of administrative remedies and deprivation of judicial review**

The Ninth Circuit has held that the exhaustion requirement in § 1326(d)(1) will not bar collateral review of a deportation proceeding when the waiver of an administrative appeal was not valid. *United States v. Muro-Inclan,* 249 F.3d 1180, 1183 (9th Cir.2001). "An alien is barred from collaterally attacking an underlying deportation order 'if he validly waived the right to appeal that order' during the deportation proceedings." *Id.* at 1182 (*quoting United States v. Arrieta,* 224 F.3d 1076, 1079 (9th Cir.2000)). "In order for the waiver to be valid, however, it must be both 'considered and intelligent.'" *Arrieta,* 224 F.3d at 1079 (*citing United States v. Mendoza-Lopez,* 481 U.S. 828, 840 (1987)). In *United States v. Gonzalez,* 429 F.3d 1252, 1256 (9th Cir.2005), the court found that a "waiver is not considered and intelligent when the record contains an inference that the petitioner is eligible for relief from deportation, but the Immigration Judge ("IJ") fails to advise . . . of this possibility and [to provide an] opportunity to develop the issue." *See also United States v. Ubaldo-Figueroa,* 364 F.3d 1042, 1050 (9th Cir.2004) ("The requirement that the IJ inform an alien of his or her ability to apply for relief from removal is mandatory, and failure to so inform the alien of his or her eligibility for relief from removal is a denial of due process that invalidates the underlying deportation proceeding." (internal

4

quotation marks and brackets omitted)).

The government contends that defendant knowingly waived his right to contest or appeal his removal, and thus is foreclosed from collaterally attacking the 2007 removal proceeding. In this case, the executed waiver form advised Rodriguez that he could contest that he was "convicted of the criminal offense described in [the citation]." (Govt.'s Ex. 9). Rodriguez responds that the waiver was not "considered and intelligent" where the form only provided the opportunity to contest, as a factual matter, whether Rodriguez was convicted of the criminal offense described in the allegation and did not provide him with the opportunity to contest the *nature* of the criminal offense, that is, whether his conviction qualified as an aggravated felony, and thus, whether he was deportable.

In this case, the Court finds Rodriguez was not advised that he had the right to contest whether his 2007 conviction constituted an "aggravated felony." Thus, the question is whether the record contained an inference that Rodriguez's 2007 conviction for attempted murder was not an aggravated offense, such that the IJ should have advised Rodriguez of that possibility and allowed him to develop the issue. As discussed below, the answer is no. As such, the Court concludes the waiver was adequate, and Rodriguez's due process rights were not violated.

**B. Prejudice**

The Government contends Rodriguez was not prejudiced by any due process defect in the removal proceedings because he was an aggravated felon having been convicted of attempted murder under Penal Code §§ 644 and 187. Rodriguez challenges this assertion and responds that there was insufficient evidence to place him in removal proceedings reserved for those convicted of aggravated felonies. Rodriguez argues that a conviction for attempted murder

5

under California law does not necessarily qualify as an "aggravated felony" because California's aiding and abetting theory of liability is staggeringly overbroad.

### 1. Categorical Approach

8 U.S.C. § 1101 et seq. provides a set of offenses, conviction for any one of which subjects certain aliens to removal from the United States. *See* 8 U.S.C. § 1227(a)(2)(A)(iii). In determining whether a conviction falls within the scope of a listed offense, the Ninth Circuit has applied the categorical approach that the U.S. Supreme Court set forth in *Taylor v. United States*, 495 U.S. 575; *Huerta-Guevara v. Ashcroft*, 321 F.3d 883, 886–888 (9th Cir. 2003). Under *Taylor*, courts examine the elements required by the statute of conviction to determine whether the conduct covered by the statute of conviction falls into one of the enumerated aggravated felony crimes, as defined in the generic sense used in most states. *Taylor*, 495 U.S. at 598; *see also Gonzalez v. Duenas-Alvarez*, 549 U.S. 183.

Section 1101 defines the term "aggravated felony," as used in the provision rendering aliens convicted of such crimes ineligible for cancellation of removal, *see* 8 U.S.C. § 1229b(a)(3), as including "murder," "a crime of violence", and "an attempt to commit" murder or a crime of violence." *See* 8 U.S.C. § 1101(a)(43)(A)(F)(U).

In this case, Rodriguez pled guilty to attempted murder under an aiding and abetting theory. Rodriguez does not allege that the murder statute (Penal Code § 187) or the attempt statute (Penal Code § 664) are overbroad on their face.[1] Instead, Rodriguez argues the statutes are overbroad as applied in cases (such as his) where the state has relied on an aiding and abetting theory of liability under Penal Code § 31.

---

[1] *See* Defendant's Reply to Government's Opposition, ECF at 4.

6

Under the "categorical approach" a court must first identify the generic offense. Then the Court must compare the elements of the predicate offense to that generic offense. Penal Code § 31 defines principals who are liable for committing a crime as follows:

> All persons concerned in the commission of a crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, or, not being present, have advised and encouraged its commission . . . are principals in any crime so committed.

Rodriguez cites the federal aiding and abetting statute as providing the generic offense for comparison purposes. The elements necessary to convict an individual under a federal aiding and abetting theory are (1) that the accused had the specific intent to facilitate the commission of a crime by another, (2) that the accused had the requisite intent of the underlying substantive offense, (3) that the accused assisted or participated in the commission of the underlying substantive offense, and (4) that someone committed the underlying substantive offense. *See United States v. Andrews*, 75 F.3d 552, 555 (9th Cir. 1996); *United States v. Gaskins,* 849 F.2d 454, 459 (9th Cir. 1988).

Rodriguez argues the California aiding and abetting statute is broader than the federal definition of aiding and abetting under 18 U.S.C. § 2, in that California defines "aiding and abetting" such that an aider and abettor is criminally responsible not only for the crime he intends, but also for any crime that is the "natural and probable consequence" of the intended crime. *People v. Prettyman*, 926 P.2d 1013, 1018-1019*; People v. Durham*, 70 Cal. 2d 171, 181 (1969) ("'aider and abettor . . . liable for the natural and reasonable or probable consequences of any act that he knowingly aided or encouraged.'"). As the U.S. Supreme Court recognized in *Duenas-Alvarez*, however, "[t]his fact alone does not show that the statute covers a nongeneric [state] crime" where relatively few

7

jurisdictions had expressly rejected the "natural and probable consequences" doctrine. 549 U.S. at 190-91. The *Duenas-Alvarez* court held that, to succeed in challenging the "natural and probable consequences" doctrine, a defendant must show something special about California's version of the doctrine – for example, that, in applying the statute, California criminalizes conduct that most other States would not.

Rodriguez argues California courts routinely apply the "natural and probable consequences" doctrine to sweep up conduct that would not constitute attempted murder in virtually any other jurisdiction in the country. (Defendant's Reply to Govt.'s Response, ECF 21 at 3.) While Rodriguez does not provide any support for this argument in his moving papers, he has provided in his reply to the Government's opposition a list of cases from approximately twenty-five states that require an aider and abettor to share the same intent as the principal, or to specifically aid the principal's crime. (Defendant's Reply to Government's Opposition, Appendix B.) It is unclear from those cases, however, whether those twenty-five states permit a "natural and probable consequences" doctrine. Indeed, the *Duenas-Alvarez* court recognized that many states and the federal government apply some form or variation of the "natural and probable consequences" doctrine, or permit jury inferences of intent in circumstances similar to those in which California has applied the doctrine. Thus, given these circumstances, the Court finds that Rodriguez has failed to demonstrate that there is something special about the California law for attempted murder that demonstrates a realistic probability that the state would apply its statute to conduct that falls outside the generic definition of the crime. *Duenas-Alvarez*, 549 U.S. at 191, 193.

Finally, the Court finds Rodriguez's reliance on *Andrews* to be misplaced. In *Andrews,* the court reversed an "aiding and abetting" murder

ORDER DENYING MOTION TO DISMISS INDICTMENT

conviction where the government failed to prove that the defendant had possessed the "requisite intent" for the underlying crime of second-degree murder by encouraging a co-defendant's actions. *Andrews*, 75 F.3d at 555. *Andrews* was a sufficiency of the evidence case and does not stand for the proposition that California's attempted murder statute falls outside the generic definition of the crime.

### 2. Modified Categorical Approach

The Court alternatively concludes that, even if California's attempted murder statute is overbroad under the categorical test, the count of conviction constitutes an aggravated felony under the modified categorical approach. If a court determines that the statute which the defendant was found to have violated is broader in scope than the common law provision – i.e., that the state statute proscribes not only conduct that would constitute an "aggravated felony" but also conduct that would not constitute an "aggravated felony" – then the state conviction may not be used as a basis for removal, except under a "modified categorical" approach.

Under the modified categorical approach, the conviction may be used only if the record contains "'documentation or judicially noticeable facts that clearly establish that the conviction is a predicate conviction.'" *United States. v. Rivera-Sanchez,* 247 F.3d 905, 908 (9th Cir.2001) (en banc) (citation omitted). When applying the modified categorical approach, a court is limited to consulting a narrow and carefully specified set of documents to determine whether the particular conviction qualifies. *See United States v. Franklin,* 235 F.3d 1165, 1170 n.5 (9th Cir.2000) (documentation that may be reviewed includes, *inter alia*, charging documents, plea agreement, and transcript of plea proceeding). The burden of proving that the specific conduct of which the defendant was convicted constitutes an "aggravated felony" rests squarely on the government.

ORDER DENYING MOTION TO DISMISS INDICTMENT

*Id.* at 1172.

In this case, Rodriguez entered a plea of guilty to attempted murder. As a factual basis, Rodriguez admitted that he "willfully and knowingly aided and abetted . . . the willful and unlawful attempt to murder . . . a human being, with malice aforethought." Rodriguez admitted that he "aided and abetted the attempted murder by providing a firearm to the perpetrator with the intent of encouraging and facilitating the crime . . . ." (Guilty Plea, Govt.'s Ex. 9). These facts establish that Rodriguez specifically aided the attempted murder by furnishing a gun that was to be used for such purpose. Thus, this case falls precisely within the types of cases that are categorized as typical aiding and abetting cases, as set forth in Appendix B to Defendant's Reply. In *United States v. Andrews*, 75 F.3d at 555, the Ninth Circuit reversed a defendant's conviction for aiding and abetting a murder where there was no evidence that defendant knowingly and intentionally aided the shooter by providing her the shotgun, encouraging her to shoot, or in any other obvious way assisted her in shooting the victims in the car. As noted above, Rodriguez knowingly and intentionally aided the perpetrator by providing a firearm and by encouraging and facilitating the crime.

Where a defendant is an aggravated felon, deportation is a "foregone conclusion" and there are no "plausible grounds for relief from deportation." *United States v. Garcia-Martinez*, 228 F.3d 956, 963 (9th Cir. 2000). Rodriguez is an aggravated felon and had no plausible basis to challenge his removal.[2] Accordingly, Rodriguez was not prejudiced as a result of any due process

/ / /

/ / /

---

[2] The Court's decision is unchanged by the fact that the immigration enforcement officer did not have the plea-related documents to consider, as the Court concludes it can consider them here in deciding Rodriguez's motion to dismiss.

10

ORDER DENYING MOTION TO DISMISS INDICTMENT

violation in the underlying removal proceedings.

## IV. CONCLUSION

The Court concludes that Defendant's waiver of the right to contest or appeal was "considered and intelligent" and did not violate his right to due process. Because Rodriguez failed to show prejudice resulting from any due process violations, the Court **DENIES** Defendant's motion to dismiss the indictment.

**IT IS SO ORDERED.**

Dated: April 15, 2013

HON. GONZALO P. CURIEL
United States District Judge